IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION

Case No. 4:25-CV-00200-M

SAHANETTE JOYNER,

Plaintiff,

v.

ASCOT SPECIALTY INS. CO., SEDGWICK CLAIMS MGMT. SERVS., INC., and ERIN CARROLA.

Defendants.

ORDER

In 2024, an employee of the Greenville Utilities Commission ("GUC") caused a sewage backup which flooded Plaintiff's commercial rental. *See* DE 1. Because Plaintiff and GUC are both citizens of North Carolina, Plaintiff cannot sue GUC in federal court (absent a federal question). *See* DE 5; 28 U.S.C. § 1332. Plaintiff has instead sued GUC's insurer: Ascot Specialty Insurance Company ("Ascot"), Ascot's claims manager: Sedgwick Claims Management Services ("Sedgwick"), and Ascot's adjuster: Erin Carrola ("Carrola"), seeking compensation for the damages associated with the flood. DE 1. Defendants moved to dismiss Plaintiff's claims for two broad reasons: (1) Plaintiff's claims were previously resolved against her in state court; and (2) the lack of contractual privity between Ascot and Plaintiff precludes her claims. DE 27. Pending before the court are that Motion, DE 27, and a Memorandum and Recommendation ("M&R") prepared by United States Magistrate Judge Robert T. Numbers, II, in which Judge Numbers recommends granting the motion, DE 38. For the reasons explained below, the court ADOPTS the M&R, DE 38, GRANTS Defendants' Motion, DE 27, and DISMISSES Plaintiff's Amended Complaint, DE 19.

## I. Factual and Procedural History[1]

Plaintiff's business operated from a rental property in Greenville, North Carolina. DE 1 ¶ 9. On July 18, 2024, GUC employees sought to enter the rental property following reports of a "possible flood in the building." DE 1 ¶ 10. Soon after, the GUC employees confirmed that the building "was indeed flooded with sewage." DE 1 ¶ 10. Apparently, a GUC employee had been "working on [a] sewage line" which then "burst and backed up inside the building." DE 1 ¶ 10.

The next day, Plaintiff called GUC and was told to contact a certain GUC claims manager, who then told Plaintiff to expect a call from Carrola. DE 1 ¶ 12. Plaintiff then provided Carrola with various financial statements to aid in the appraisal process. DE 1 ¶ 14. Following appraisal, Carrola made an initial "offer" of $3,000 to cover Plaintiff's loss of revenue; Plaintiff disagreed, feeling that the number was too low; Carrola then revised the "offer" to $6,655.07, apparently as a sign of "good will," and issued such payment. DE 1 ¶ 16. Plaintiff, however, refused to accept that payment, so the matter was reassigned from Carolla to a third-party accountant. DE 1 ¶ 17. Following extended discussion, Plaintiff demanded payment in the amount of $17,014.50 to cover her lost revenue, which Ascot did not issue. DE 1 ¶ 23

[1] Consistent with the legal standard on a motion to dismiss, these facts are as alleged in the Amended Complaint and within documents attached to the Amended Complaint. *Belmora LLC v. Bayer Consumer Care AG*, 819 F.3d 697, 705 (4th Cir. 2016) ("In ruling on a motion to dismiss, a court evaluates the complaint in its entirety, as well as documents attached or incorporated into the complaint.") (cleaned up). However, because Defendants raise the "affirmative defense" of *res judicata*, the "court may take judicial notice of facts from a prior judicial proceeding when the *res judicata* defense raises no disputed issue of fact." *See Andrews v. Daw*, 201 F.3d 521, 524 n.1 (4th Cir. 2000). As such, the court takes judicial notice of the documents and proceedings in *Joyner v. GUC et al.*, No. 24 CVS 2916-730 (Gen. Ct. Just. Super. Ct. Div. 2024), provided as attachments to Defendants Motion to Dismiss, *see* DE 23-1 (the relevant documents). Additionally, the court takes judicial notice of the ongoing appeal of Plaintiff's state court proceedings: *Joyner v. Greenville Utilities Commission et al.*, No. 26-275, docket (N.C. Ct. App. 2026).

Following that impasse, on October 8, 2024, Plaintiff filed suit in the Pitt County Superior Court. DE 23-1 (Pitt County Complaint); *see also* DE 39 (Plaintiff's objections to the M&R, discussing the "prior state court action"); DE 47 (Plaintiff's reply, discussing "the state court lawsuit). Plaintiff's Pitt County Complaint (which Defendants attached to their Motion to Dismiss and of which Plaintiff has not disputed the authenticity) named as defendants GUC, Ascot, Sedgwick, Carrola, and Plaintiff's landlords and brings four counts for relief: (1) negligence, (2) breach of contract, (3) breach of good faith and fair dealing, and (4) violation of North Carolina's UDTPA. *See* DE 23-1. The factual allegations in Plaintiff's state court complaint are, if not identical, exceedingly similar to those at issue here, detailed above. *Compare* DE 19 (Amended Complaint) *with* DE 23-1 at 1–12 (Pitt County Complaint). Plaintiff sought damages of at least $91,224.10. DE 23-1 at 13.

Sedgwick and Carrola moved to dismiss Plaintiff's state complaint for lack of personal jurisdiction and failure to state a claim—specifically arguing that neither owed any duty to Plaintiff. DE 23-1 at 17–18. The state court agreed and dismissed Plaintiff's claims against Sedgwick and Carrola with prejudice. DE 23-1 at 31–32. Ascot then moved to dismiss Plaintiff's complaints on the same grounds. DE 23-1 at 37–39. The state court again agreed and dismissed Plaintiff's claims against Ascot with prejudice. DE 23-1 at 44. On October 13, 2025, the state court dismissed Plaintiff's remaining claim against GUC with prejudice as a sanction for Plaintiff's refusal to produce documents. DE 23-1 at 69–72. Plaintiff appealed the dismissals to the North Carolina Court of Appeals, which has not issued a ruling on Plaintiff's complaint as of this date. *See Joyner v. Greenville Utilities Commission et al.*, No. 26-275, docket (N.C. Ct. App. 2026).

Four days after her last claim was dismissed in state court, on October 17, 2025, Plaintiff filed suit in this court against GUC, Ascot, Sedgwick, Carrola, and Plaintiff's landlord: Charlie

Long. DE 1. That complaint is substantially similar to the complaint Plaintiff filed in state court; it advanced the same four claims for relief against the same parties. *Compare* DE 1 *with* DE 23-1. It did seek more damages: a minimum of $217,779.54, but that difference seems driven by an increase in "loss wages" given the greater passage of time. DE 1. Because Plaintiff's original complaint contained "no information that would enable this court to reasonably infer diversity between the parties," the court ordered Plaintiff to "explain[] why this court should not dismiss this action for lack of subject-matter jurisdiction." DE 5. In response, Plaintiff expressed her intention to "voluntarily dismiss [GUC] and Charlie Long," DE 12 at 1, and then filed an amended complaint, which omitted GUC as a Defendant, DE 19.[2] Plaintiff's Amended Complaint omits her initial first and second claims for relief, leaving two: (1) breach of good faith and fair dealing and (2) violation of the North Carolina UDTPA. DE 19 at 5–6.

Defendants moved to dismiss Plaintiff's claims, arguing that Plaintiff had failed to state a claim upon which relief may be granted and that Plaintiff's claims are barred by *res judicata*. This court referred that motion, under 28 U.S.C. § 636(b)(1)(B), to Judge Numbers for the preparation of an M&R. Judge Numbers did so, DE 38; Plaintiff filed objections, DE 39; Defendants responded to Plaintiff's objection, DE 41; and Plaintiff filed three supplemental notices and a reply following Defendants' response, DE 40, DE 42, DE 43, DE 47. Accordingly, this matter is ripe for consideration.

---

[2] Although Plaintiff did not omit Charlie Long from the Amended Complaint and, indeed, makes allegations against Long in it, the court will consider GUC and Long to be dismissed from this case. That decision is consistent with the Fourth Circuit's counsel that district courts ought to look past the caption when considering who a *pro se* plaintiff intends to sue. *See Nichols v. Bumgarner*, 173 F.4th 511, 519 (4th Cir. 2026).

## II. Applicable Standards

A magistrate judge's recommendation carries no presumptive weight. The court "may accept, reject, or modify, in whole or in part, the . . . recommendation[] . . . receive further evidence or recommit the matter to the magistrate judge with instructions." 28 U.S.C. § 636(b)(1); *accord Mathews v. Weber*, 423 U.S. 261, 271 (1976). The court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." *Id.* § 636(b)(1). Absent a specific and timely objection, the court reviews only for "clear error" and need not give any explanation for adopting the recommendation. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

When considering a Rule 12(b)(6) motion to dismiss, the court must accept as true all of the well-pleaded factual allegations contained within the complaint and must draw all reasonable inferences in the plaintiff's favor, *Hall v. DIRECTV, LLC*, 846 F.3d 757, 765 (4th Cir. 2017), but any legal conclusions proffered by the plaintiff need not be accepted as true, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The *Iqbal* Court made clear that, although its ruling "marks a notable and generous departure from the hypertechnical, code-pleading regime of a prior era," that ruling "does not unlock the doors of discovery for a [litigant] armed with nothing more than conclusions." *Cf. id.* at 678–79.

To survive a Rule 12(b)(6) motion, the claimant's well-pleaded factual allegations, accepted as true, must "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). *Twombly*'s plausibility standard requires that a claimant's well-pleaded factual allegations "be enough to raise a right to relief above the speculative level,"

i.e., allege "enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Id.* at 555–56. A speculative claim resting upon conclusory allegations without sufficient factual enhancement cannot survive a Rule 12(b)(6) challenge. *Iqbal*, 556 U.S. at 678–79 ("where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged--but it has not 'show[n]'--'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)). Importantly, the court's duty to accept a plaintiff's well-pleaded factual allegations does not extend to "allegations that contradict matters properly subject to judicial notice or by exhibit." *Veney v. Wyche*, 293 F.3d 726, 730 (4th Cir. 2002). Moreover, the court need not accept as true legal conclusions disguised as factual allegations. *Iqbal,* 556 U.S. at 679–81.

A court sitting in diversity must apply state-law preclusion principles. *Q Int'l Courier, Inc. v. Smoak*, 441 F.3d 214, 218 (4th Cir. 2006). In North Carolina, the doctrine of *res judicata* (claim preclusion) "prevents a party from suing on a claim which has been previously litigated to a final judgment by that party or such party's privies and precludes the assertion by such parties of any legal theory, cause of action, or defense which could have been asserted in that action." 18 James Wm. Moore, et al., *Moore's Fed. Practice* § 131.10(1)(a) (2026). "Under the doctrine of *res judicata* or 'claim preclusion,' a final judgment on the merits in one action precludes a second suit based on the same cause of action between the same parties or their privies." *Whitacre P'ship v. Biosignia, Inc.,* 591 S.E.2d 870, 880 (N.C. 2004) (citation omitted). "For *res judicata* to apply, a party must show that the previous suit resulted in a final judgment on the merits, that the same cause of action is involved, and that both the party asserting *res judicata* and the party against whom *res judicata* is asserted were either parties or stand in privity with parties." *State ex rel. Tucker v. Frinzi,* 474 S.E.2d 127, 128 (N.C. 1996) (internal quotations omitted). "The doctrine

prevents the relitigation of all matters . . . that were or should have been adjudicated in the prior action." *Whitacre P'ship,* 591 S.E.2d at 880 (internal quotations omitted).

III. Discussion

Because Plaintiff "sued these defendants for the same claims under the same theory in state court," and those claims were "dismissed with prejudice," Judge Numbers explains that Plaintiff is "barred from relitigating those claims here." DE 38 at 6. Judge Numbers thus recommends granting Defendants' Motion to Dismiss. DE 38 at 6. Plaintiff has objected to that recommendation, arguing that "[t]he M&R incorrectly states that Plaintiff's claims are precluded," because, Plaintiff contends, "[t]he prior state court action focused on the liability of the landlord, Charlie Long." DE 39 at 1. In her subsequent reply, Plaintiff further argues that her UDTPA claims "could [not] have been brought at the time of the initial filing," because they "address[] . . . Defendant's discovery responses . . . [during] these federal proceedings," and thus are not barred by *res judicata*. DE 41 at 1. Accordingly, the court will review *de novo* the application of *res judicata* to Plaintiff's current claims.

*Res judicata* bars Plaintiff's claims. Plaintiff sued the exact same parties for the exact same claims in state court. *Compare* DE 1 *with* DE 23-1. The state court dismissed those claims with prejudice. DE 23-1. Thus, there was a "previous suit" that "resulted in a final judgment on the merits," in which "the same cause of action is involved" and both Plaintiff and Defendants "were . . . parties." *Cf. State ex rel. Tucker,* 474 S.E.2d at 128. Plaintiff's argument that the prior state claims hinged on the liability of her landlord is both incorrect and immaterial. Likewise, Plaintiff's attempt to characterize her Amended Complaint as bringing new UDTPA claims is directly contradicted by the Amended Complaint itself. *See* DE 19 at 6 ("All of Defendant's aforesaid actions and/or inactions *in their performance under their insurance policy* were in violation of the

North Carolina Unfair Trade Practice Act" (emphasis added)). Plaintiff's objection is thus OVERRULED.

Of additional note, Plaintiff's ongoing appeal does not affect the preclusive effect of the state court judgments. "When a fact has been agreed upon or decided in a court of record, neither of the parties shall be allowed to call it in question, and have it tried over again at any time thereafter, so long as the judgment or decree stands unreversed." *State v. Summers*, 351 N.C. 620, 623, 528 S.E.2d 17, 20 (2000) (cleaned up); *see also Armfield v. Moore*, 44 N.C. 157, 157 (1852) ("Where a fact has been agreed on or decided in a Court of record, neither of the parties thereto shall thereafter be allowed to call it in question, as long as the judgment or decree stands unreversed.").

Alternatively, even if Plaintiff's claims were not barred by the application of *res judicata*, the court agrees with Judge Numbers that Plaintiff has filed to state meritorious claims for breach of the implied covenant of good faith and fear dealing and breach of the UDTPA. DE 38. As for the implied covenant of good faith, Judge Numbers explains that "[b]ecause [Plaintiff] does not have a contract with Defendants, she cannot bring a claim for the implied covenant of good faith and fair dealing." DE 38 at 9. Regarding the UDTPA, Judge Numbers explains that the same "lack of [contractual] privity means that [Plaintiff] cannot bring a UDTPA claim against Defendants." DE 38 at 10. Plaintiff objects to these two recommendations together, arguing that "[t]he M&R errs in finding that Defendants owed no duty to Plaintiff under the UDTPA." DE 39 at 1.

That objection is also OVERRULED. "In every contract there is an implied covenant of good faith and fair dealing that neither party will do anything which injures the right of the other to receive the benefits of the agreement." *Bicycle Transit Auth., Inc. v. Bell*, 333 S.E.2d 299 (1985)

(internal quotations omitted). "However, if no contract exists, there is no cause of action for breach of an implied covenant of good faith and fair dealing." *Drake v. CommScope Techs., LLC*, No. 5:24-CV-00233-KDB-DCK, 2025 WL 2814642, at *3 (W.D.N.C. Sept. 30, 2025) (citation omitted). Likewise, "North Carolina does not recognize a cause of action for third-party claimants against the insurance company of an adverse party based on unfair and deceptive trade practices," *Wilson v. Wilson*, 468 S.E.2d 495, 497 (1996), unless the third party is in contractual privity with the insurer, *Meek v. Unitrin Safeguard Ins. Co.*, No. 3:21-CV-257, 2022 WL 1164802, at *4 (W.D.N.C. Mar. 21, 2022) (citation omitted). Because Plaintiff did not have a contract with any of the remaining Defendants, she can neither state a claim against them for breach of the implied *contractual* covenant of good faith and fair dealing or violation of the UDTPA.

## IV. Conclusion

Consistent with the above reasoning, the court OVERRULES Plaintiff's objections, DE 39, and ADOPTS AS ITS OWN the recommendation of the Magistrate Judge, DE 38. Accordingly, Defendant's Motion to Dismiss is GRANTED. DE 27. Plaintiff's Amended Complaint is DISMISSED. DE 19. In light of that disposition, the remaining pending motions are DENIED AS MOOT. DE 31, DE 37, DE 45. The Clerk of the Court is directed to close this case.

SO ORDERED this 14th day of August, 2026.

Richard E Myers II

RICHARD E. MYERS II
CHIEF UNITED STATES DISTRICT JUDGE